IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
────────────────────────────
                            :
JAMES COLES, et al.,        :       HON. JEROME B. SIMANDLE
                            :
          Plaintiffs,       :       Civil No. 10-6132 (JBS/AMD)
                            :
     v.                     :
                            :            OPINION
NICHOLAS CARLINI, et al.,   :
                            :
          Defendants.       :
                            :
────────────────────────────
```

APPEARANCES:

Boyd Spencer, Esq.
2100 Swede Road
Norristown, PA 19401
     Attorney for Plaintiffs James Coles, Louis C. Degailler and
     Joseph Ballinger

Roshan Deven Shaw, Deputy Attorney General
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 Market Street
P.O. Box 112
Trenton, NJ 08625
     Attorney for Defendants Nicholas Carlini, Gregory Manuel,
     Paula T. Dow, Colonel Joseph R. Fruentes, PH.D, Kristopher
     Gertsen, Erik Lindner, and Thomas O'Connor

**SIMANDLE**, Chief Judge:

I.  **INTRODUCTION**

     This matter is before the Court on the combined motion of
Defendants Nicholas Carlini, Paula T. Dow, Joseph R. Fuentes,
PhD, Kristofer Gertsen, Erik Lindner, Gregory Manuel and Thomas
O'Connor (collectively "Defendants") to dismiss the complaint
pursuant to Fed. R. Civ. P. 12(b)(6) and motion to strike
pursuant to Fed. R. Civ. P. 12(f).  [Docket Item 39]  The

Plaintiffs James Coles, Louis C. Degailler, and Joseph Ballinger (collectively "Plaintiffs") filed opposition to this motion.  The court heard oral argument on November 30, 2011.

This action arises out of a traffic stop which occurred on July 30, 2009 on Route 70 in Southampton, N.J.  The Plaintiffs were riding their motorcycles to a charity fundraiser for a sick child along with three other motorcyclists.  The Plaintiffs were wearing jackets with symbols referencing their membership in certain motorcycle organizations, commonly referred to as "colors."  The Plaintiffs argue they were impermissibly stopped by the police because they were wearing their colors.  The Defendants maintain that the Plaintiffs were stopped because they were wearing improper helmets.

For the reasons discussed herein, the Defendants' motion to dismiss will be granted in part and denied in part and the Defendants' motion to strike will be denied.

II.   **BACKGROUND**

**A. Statement of the Facts**

On July 30, 2009, six motorcycle club members, including the three Plaintiffs, were riding their motorcycles as a group near Red Lion, New Jersey. (Am. Comp. ¶ 1.)  During this ride, the Plaintiffs were wearing jackets that bore logos, and the names of their motorcycle clubs on the back. (Id. ¶ 2)

These logos are known as "colors." (Id.)  Colors are

collective membership marks, which are a form of trademarks, owned by motorcycle clubs. (Id. at ¶ 44.)  The membership marks are worn on the back of jackets or vests to indicate membership in a motorcycle club. (Id.)  Plaintiffs James Coles and Louis DeGallier are members of the Pagan Motorcycle Club and on July 30, 2009, were wearing the Pagan's Motorcycle Club Colors.  (Id. at ¶ 54.)  Plaintiff Joseph Ballinger is a member of the Tribe Motorcycle Club and on July 30, 2009, was wearing Tribe Motorcycle Club Colors.  (Id. at ¶ 56.)  The other three remaining motorcyclists in the group were also wearing colors. (Id. at ¶¶ 55-58.)

The Plaintiffs were on their way to a charity fund raiser at the Woodshed Beef & Beer in Vincentown, New Jersey.  (Id. at ¶ 2.)  The fundraiser was held by another motorcycle club in order to raise funds for an ill child of one of its members.  (Id. at ¶ 58.)

On their way to the charity fund raiser, the Plaintiffs' group passed a New Jersey State Police car, which was parked at a gasoline station on Route 206 in Southampton, New Jersey.  (Id. at ¶ 59.)  The police car was occupied by Defendant Trooper Carlini ("Carlini"), who was a senior trooper, and Defendant Trooper Manuel ("Manuel"), a junior trooper who was receiving on-the-job training from Carlini.  (Id. at ¶ 60.)

None of the motorcyclists or their motorcycles displayed

3

anything visibly which violated the law.  (Id. at ¶ 62.)
However, the police car pulled out of the gas station and
followed the Plaintiffs' motorcycle group for approximately five
miles.  (Id. at ¶¶ 63-64.)  Troopers Carlini and Manuel then
activated the emergency or enforcement lights on their police car
and directed the six motorcycles to pull off to the shoulder of
the road on State Route 70.  (Id. at ¶ 65.)  No violations of the
law were visible or capable of being observed by Carlini and
Manuel before the traffic stop. (Id. at ¶ 61.)

Shortly after the Plaintiffs' group had stopped and pulled
over to the side of the road, Troopers Carlini and Manuel
manually activated a video camera which video taped the traffic
stop.  (Id. at ¶ 66.)  The New Jersey State Police agreed to make
video tape recordings of all traffic stops as a result of a court
approved settlement in United States v. State of New Jersey,
Civil No. 99-0597, which was in full force and effect on July 30,
2009.  (Id. at ¶¶ 67-68.)  According to this consent decree, the
New Jersey State Police were required to begin recording a
traffic stop at the time they signaled motorists to stop.  (Id.
at ¶ 69.)  Here, Troopers Carline and Manuel began recording
after they had signaled the Plaintiffs' group to stop and the
group was already pulled over.  (Id.)

After the Plaintiffs' group was pulled over, the radio
dispatcher reported to Troopers Carlini and Manuel that there

4

were "three different chapters coming down (Route) 530." (Id. at ¶ 75.)  Carlini then reported to the dispatcher, "I got three Pagan's, a Tribe and two unknowns." (Id. at ¶ 77.)

Trooper Carlini then exited the police car and approached the group.  Carlini told the group that, "you can all face forward." (Id. at ¶ 79.)  Carlini then stated, "None of you have proper helmets." (Id. at ¶ 81.)  Carlini made this declaration without inspecting, either internally or externally, any of the Plaintiffs' group's helmets.  (Id. at ¶ 82.)

Trooper Carlini then told the group to "Stay on your bikes" and both Carlini and Manuel returned to the police car.  (Id. at ¶¶ 87-88.)  Trooper Carlini reported to dispatch that he had "Four Pagans, a Tribe and another guy with no colors." (Id. at ¶ 91.)  Trooper Carlini then mentioned the section of the traffic code that he intended to use to write the Complaint-Summonses as "4-14.3q." (Id. at ¶ 92.)  This citation applies to helmets required for operation of a motorized bicycle, not a motorcycle. (Id. at ¶ 94.)  Trooper Carlini confirmed this citation with the dispatcher four times. (Id. at ¶¶ 92, 100, 101, 110.) Trooper Carlini stated the reason for the helmets being unauthorized under 4.14-3q is that, "They have to wear visors." (Id. at ¶ 122.)

Trooper Carlini then requested "wants and warrants" on all six of the license tags and motorcyclists by stating, "Now here

5

comes the bad part, I am going to need lookup on all of them . .
. . warrant checks . . . . we are not going anywhere." (Id. at ¶
102.)  Trooper Carlini then reported his location to the
dispatcher.  (Id. at ¶ 106.)  The dispatcher then informed
Carlini and Manuel that there were 90 bikes at the Woodshed bar.
(Id. at ¶ 107.)

Carlini and Manuel were then joined by Defendants Troopers
Gertsen and Lindner who stated that the Plaintiffs' group would
have run if they had any contraband.  (Id. at ¶ 111.)  Troopers
Gertsen and Linder then informed Carlini and Manuel that "one guy
I pulled over about a mile up . . . . I couldn't see if he was
wearing anything." (Id. at ¶ 114.)

Defendant Trooper O'Connor then joined Troopers Carlini,
Manuel, Gertsen and Lindner at the scene.  (Id. at ¶ 116.)
Either Gertsen, Lindner or O'Connor commented, "These are good
hardworking folk.  They're having a benefit for somebody's kid,
man, why did you have to mess with them?" (Id. at ¶ 119.)

In his police car, Trooper Carlini asked, "Are we going to
use Blue and Gold are the only colors that ride these roads?"
(Id. at ¶ 124.)  Blue and gold refer to the colors of the New
Jersey State Trooper uniform.  (Id. at ¶ 126.)  Trooper Carlini
then confirms that "We use blue and gold are the only colors that
are allowed on this road." (Id. at ¶ 127.)

Troopers Carlini and Manuel then exited the car and asked

Kelly Ballinger, the wife of Plaintiff Joseph Ballinger who was riding on her husband's motorcycle, for her license. (<u>Id.</u> at ¶ 130.)

Dispatch informed Trooper Carlini that Plaintiff Joseph Ballinger had a suspended license for non-payment of an insurance surcharge. (<u>Id.</u> at ¶ 132.) Plaintiff Joseph Ballinger had paid the insurance surcharge and the database was incorrect. (<u>Id.</u> Ex. 20.)

All the other motorcyclists had valid licenses and no one had an outstanding warrant. (<u>Id.</u> at ¶ 132.) Trooper Carlini requested dispatch to see whether Kelly Ballinger had a motorcycle endorsement and Dispatch informed that no endorsement was showing. (<u>Id.</u> at ¶ 134.)

Trooper Gertsen, Lindner or O'Connor then asked, "When we eventually go out there, what's our game plan for turning everything inside out? Do we give like one big speech, or we tell them one at a time?" (<u>Id.</u> at ¶ 135.) "Inside out" refers to the policy or practice of turning a jacket or vest inside out, to hide the motorcycle club colors. (<u>Id.</u> at ¶ 137.) Trooper Carlini responded by saying, "Blue and gold are the only colors allowed on this road." (<u>Id.</u> at ¶ 139.)

Troopers Carlini and Manuel then left their police cars and approached the Plaintiffs' group. (<u>Id.</u> at ¶ 143.) Trooper Manuel had written and signed all the summonses at the direction

of Carlini.  (Id. at ¶ 144.)  Seven summonses were served on all
of the motorcyclists, including the Plaintiffs.  (Id. at ¶ 146.)

After the summonses were served, Trooper Carlini spoke to
the entire group of motorcyclists and said, "Now you are all
going to take your jackets off, because on these highways these
are the only colors (indicating his blue and gold uniform) you
wear." (Id. at ¶ 149.)

Trooper Carlini then said to Plaintiff Ballinger, "You are a
suspended driver, so you're getting a ticket as well for driving
while suspended and I got no one else for this bike." (Id. at ¶
156.)

Trooper Carlini then stated, "So you are going to take your
jackets off, or I'm going to tow this bike." (Id. at ¶ 158.)
Trooper Carlini then said, "You want to take your jackets off?
If not, this bike is getting hooked." (Id. at ¶ 159.)  The
Plaintiffs did not remove their jackets, which bore their
motorcycle club colors. (Id. at ¶ 161.)  Carlini then stated, "I
can stand here all night as well." (Id. at ¶ 162.)

Then Carlini said, "I'm going to call for a tow for the
impound."  Carlini returned to the police car and told dispatch,
"You can start the first available for the impound of this
motorcycle." (Id. at ¶ 166.)  At this time, the motorcycle was
parked on the shoulder of the road.  (Id. at ¶ 167.)

Plaintiff Coles requested a complaint form, which was handed

to him by Carlini, and then requested the name of the trooper who handed him the form.  (Id. at ¶ 172.)  Trooper Carlini told Plaintiff Coles, "It's on the ticket."  (Id. at ¶ 173.)  In actuality, only Trooper Manuel's name was on the ticket as he was the one who issued the tickets.  (Id.)

Then Carlini announced to the group that "Youse [ph] five are free to leave."  (Id. at ¶ 174.)  The two remaining members of the group were Plaintiff Ballinger and his wife, Kelly Ballinger.  (Id. at ¶ 175.)  At this point, the traffic stop had lasted a total of 51 minutes, 41 minutes of which the Defendants Carlini and Manuel were in their police car.  (Id. at ¶ 176.)

Four of the seven motorcyclists went.  Both the Ballingers and Bob Fleming, one of the members of the group, stayed behind. (Id. at ¶ 178.)  Before the impound arrived, a friend of Plaintiff Ballinger, Walt Smith, arrived in a pick up truck, driven by George Fulmer, and removed the motorcycle.  (Id. at ¶¶ 168, 184.)  During the traffic stop, Mr. Smith, a fellow member of the Pagan's Motorcycle Club, had passed the Plaintiffs and was stopped by another New Jersey State Trooper.  (Id. at ¶ 181.) This trooper stated to Mr. Smith that he was being stopped for no reason, except to check his license, registration and insurance documents.  (Id. at ¶ 181.)  When Mr. Smith arrived, Defendant Troopers again examined his license and found that it had a valid motorcycle endorsement.  (Id. at ¶ 184.)

9

Trooper Carlini then canceled the order to impound the motorcycle and permitted Mr. Smith to drive the bike away.  (Id. at ¶¶ 186-87.)  Plaintiff Ballinger was driven away in the pick up by Mr. Fulmer, and Kelly Ballinger was driven away as a passenger on the motorcycle with Mr. Smith.  (Id. at ¶ 187.)  At this point, the traffic stop had lasted one hour and fourteen minutes for Plaintiff Ballinger.  (Id. at ¶ 184.)

On October 14, 2009, Plaintiffs James Cole and Louis C. DeGailler appeared in the Municipal Court for Southampton Township to contest the summonses that were issued on July 30, 2009.  (Id. at ¶ 189.)  They were represented by counsel, Mr. Boyd Spencer, who represents the Plaintiffs in the instant action.  (Id. at ¶ 190.)  They presented the helmets that they had been wearing on July 30, 2009, to the municipal prosecutor for inspection.  (Id. at ¶ 192.)

The prosecutor agreed that the helmets complied with N.J.S.A. § 39:3-76.7, the statute applicable to regulating motorcycle helmets.  (Id.)  The prosecutor further commented that the trooper had told him that the summonses were purposely written under section N.J.S.A. § 39:4-14.3q, Helmets for motorized bicycles, to insult and demean the Plaintiffs and disparage their Harley-Davidson motorcycles.  (Id. at ¶ 193.)

The municipal court then dismissed the charges finding that the helmets were in compliance with the applicable statute.  (Id.

at ¶ 194.)

Plaintiff Ballinger also had his helmet violation charge dismissed.  (Id. at ¶ 147.)  The summons for driving with a suspended license was also dismissed as to Plaintiff Ballinger because he had in fact paid the insurance surcharge.  (Id. Ex. 20.)  The charge was reduced to not having a license in his possession.  (Id.)

## B. Procedural History

The Plaintiffs collectively filed the instant action pursuant to 42 U.S.C. §§ 1983, 1985(2 & 3); 1986, 1988 and N.J.S.A. § 10:6-2 alleging numerous constitutional violations as a result of the above incident.  [Docket Item 1.]  The Plaintiffs named Troopers Carlini, Manuel, Gertsen, Lindner and O'Connor as defendants in their individual capacity.  The complaint also named Colonel Joseph R. Fuentes, Ph.D., as the Superintendent of the New Jersey State Police, as a defendant in both his individual and official capacity.  Finally, the complaint also names Paula T. Dow, as the Attorney General of New Jersey, as a defendant in her official capacity.  The Plaintiffs have amended their complaint since filing the instant action.

The First Amended Complaint alleges several violations of federal and state law.  Count I of the Complaint alleges constitutional violations of the Fourth Amendment, First Amendment and Fourteenth Amendment (substantive and procedural

11

due process, equal protection) against the five troopers and
Colonel Fuentes in their individual capacities.  Count II alleges
New Jersey state law violations of malicious prosecution and
abuse of process against the five troopers and Colonel Fuentes in
their individual capacities.  Count III of the complaint seeks
declaratory relief against the five troopers in their individual
capacity, Colonel Fuentes in his individual and official capacity
and Paula Dow in her official capacity.[1]

In lieu of answering the First Amended Complaint, after
several extensions were granted, the Defendants jointly filed the
instant motion to dismiss. [Docket Item 39.]  The Defendants'
motion addresses Counts I and II of the complaint but does not
address Count III for declaratory relief.  Therefore, this
opinion will only examine Counts I and II.

---

[1] The Plaintiffs seek extensive declaratory relief
specifying that (1) wearing of collective membership marks or
colors by members of a motorcycle club is a constitutional right;
(2)  wearing colors is not a constitutional basis for a traffic
stop; (3) it is unconstitutional to issue a summons for wearing
an improper motorized bicycle helmet when the motor vehicle
stopped is a motorcycle, it is unconstitutional to issue a
summons for wearing an improper helmet without an inspection of
the helmet; it is unconstitutional to retaliate against
motorcycle club members who wear colors by issuing summonses
without foundation; (4) making multiple warrant checks is
unconstitutional unless some reasonable suspicion exists for the
warrant checks and it is unconstitutional to extend a traffic
stop in order to punish, harass, demean, discriminate,
intimidate, humiliate or embarrass motorcycle club members; and
(5) threatening to impound a motorcycle in order to coerce
motorcycle club members to remove their collective membership
marks or colors, is unconstitutional.

In their motion, the Defendants argue that they are entitled to qualified immunity as to the stop, detention and citations issued to the Plaintiffs because each was objectively reasonable under the circumstances.  Next, the Defendants argue that the Plaintiffs failed to state a claim for malicious prosecution or abuse of process.  The Defendants also argue that the amended complaint fails to plausibly suggest a violation of the Fourteenth Amendment or First Amendment.  In addition, the Defendants argue that the Plaintiffs' complaint fails to plausibly suggest a violation of 42 U.S.C. § 1985.  Finally, the Defendants maintain that the Plaintiffs have failed to state a claim under the New Jersey Civil Rights Act.

The Plaintiffs filed opposition to this motion.  The Plaintiffs argue that the Defendants support their motion to dismiss by injecting their own versions of the facts into their argument and ignoring the facts that are pled in the complaint. The Plaintiffs maintain that the argument for qualified immunity is premature in a motion to dismiss and unsupported by the facts in the First Amended Complaint.  Moreover, the Plaintiffs argue that the complaint does sufficiently state a claim for each count alleged and should not be dismissed.

The Defendants also combined their motion to dismiss with a motion to strike pursuant to Fed. R. Civ. P. 12(f).  The Defendants urge the court to strike all references to the Consent

Decree in <u>United States v. New Jersey</u>, No. 99-5970, because the
Plaintiffs were not parties to the consent decree and have no
standing to enforce it.  Further, the Defendants argue that
<u>United States v. New Jersey</u> involved racial profiling and is not
relevant to the instant action.

The Plaintiffs maintain in their opposition to the motion to
strike that all the procedures under the Consent Decree were to
be applied equally, no matter what the reason for the traffic
stop, or the persons being stopped.  The Consent Decree required
the Defendant Troopers to begin videotaping at the moment they
turned their lights on and signaled the Plaintiffs to stop, which
did not happen in this case.  Rather, the Consent Decree in this
case was violated, and the Plaintiffs argue that a spoliation
inference may arise.  The Plaintiffs contend that the Defendants'
motion is nothing more than an attempt to preemptively seek to
suppress proper inferences duly raised by the complaint.

This opinion will first address the Defendants' motion to
dismiss and will then address the Defendants' motion to strike.

**III.  MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**A.  Standard of Review**

In deciding the Defendants' motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6), the Court must look to the face of the
First Amended Complaint -- and undisputedly authentic underlying
documents -- and decide, taking all of the allegations of fact as

14

true and construing them in a light most favorable to the
Plaintiffs, whether their allegations state any legal claim, and
"determine whether, under any reasonable reading of the
complaint, the plaintiff is entitled to relief." Phillips v.
County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citing
Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.
2002)); see Markowitz v. Northeast Land Co., 906 F.2d 100, 103
(3d Cir. 1990). For Plaintiffs to proceed with their claims, the
Amended Complaint must contain "sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007));
Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). In
accord with Fed. R. Civ. P. 8(a)(2), a pleading that states a
claim for relief need only contain "a short and plain statement
of the claim showing that the pleader is entitled to relief."
Thus, a plaintiff is obligated to "provide the 'grounds' of his
'entitle[ment] to relief,'" which requires more than "labels and
conclusions," but he is not required to lay out "detailed factual
allegations." Twombly, 550 U.S. at 555 (quoting Papasan v.
Allain, 478 U.S. 265, 286 (1986)). Therefore, a complaint must
contain facially plausible claims, that is, a plaintiff must
"plead factual content that allows the court to draw the
reasonable inference that the defendant is liable for the

misconduct alleged." <u>Twombly</u>, 550 U.S. at 556.

Following the Supreme Court precedent in <u>Iqbal</u>, the Third Circuit Court of Appeals in <u>Fowler</u> instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim upon which relief may be granted. <u>Fowler</u>, 578 F.3d at 210-11 (citations omitted). The analysis should be conducted as follows:

> (1) the Court should separate the factual and legal elements of a claim, and the Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and (2) the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond plaintiff's entitlement to relief. A plaintiff shows entitlement by using the facts in his complaint.

<u>Id.</u>

The Court independently considers whether the alleged claims are sufficient to survive Defendants' motion to dismiss, and draws on its judicial experience and common sense when conducting this context-specific inquiry. <u>See Twombly</u>, 550 U.S. at 556 (holding that a reviewing court's inquiry necessitates that a court draw on its judicial experience and common sense).

Only the allegations in the First Amended Complaint, matters of public record, orders, and exhibits attached to the First Amended Complaint are taken into consideration. <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812

16

(3d Cir. 1990).  Additionally, without converting this motion to a motion to summary judgment, the "court may consider an undisputedly authentic document . . . if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  "To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."  Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-427 (3d Cir. 1999).

**B. DVD Video**

As a preliminary matter, the court will address the issue of whether the DVD video of the traffic stop submitted by the Plaintiffs as an exhibit to their complaint is properly considered by the court on the this motion.

A court "may consider an undisputedly authentic document . . . if the plaintiff's claims are based on the document"  without converting a motion to dismiss into a motion for summary judgment,  Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, it is undisputed by the parties that the recording of the traffic stop attached as an exhibit to the Plaintiff's First Amended Complaint is an authentic document.  Therefore, the court will consider it in evaluating the Defendants' motion to dismiss and will not

convert the instant motion into a motion for summary judgment.

### C.   Qualified Immunity

First, the Defendants argue that the complaint should be dismissed because they are entitled to qualified immunity.  The Defendants argue that the Plaintiffs' stop, detention and citations were each objectively reasonable under the circumstances.  Specifically, the Defendants maintain that the initial stop was supported by a reasonable suspicion of a motor vehicle violation, probable cause existed for the issuance of the citations and the duration of the stop was objectively reasonable.

The Plaintiffs contend that qualified immunity is not warranted here, especially in light of the early procedural posture of the case.  In particular, the Plaintiffs argue that the Defendants disregard the facts as alleged in the First Amended Complaint and instead, rely on their own factual allegations which are outside the four corners of the complaint and unsupported by evidence.

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499

18

F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations.  The Court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." Id. (citation omitted).  If the Plaintiff has sufficiently alleged such a deprivation, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (internal quotations and citations omitted).

In this case, the Plaintiff has sufficiently alleged deprivations of a clearly established constitutional right.  The First Amended Complaint as well as the video present facts supporting the Plaintiffs' allegations that they were subjected to an unlawful seizure by the Defendant Troopers as a result of wearing their colors.  It is undisputed by the parties that wearing colors symbolizing membership in an organization is protected under the First Amendment. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 505-506 (1969).  There is clear evidence in the video tape as well as sufficient factual allegations in the Complaint where the Troopers discuss making the Plaintiffs turn their jackets inside

out, surround the Plaintiffs on the side of the road and order
them to take off their jackets, and threaten to impound one of
the motorcycles if the Plaintiffs don't take off their colors.

The Defendants argue against these clear factual
allegations.  First, the Defendants argue that at the beginning
of the video tape, one of the bikers had his helmet off and on
his handlebars.  The Defendants argue that this is sufficient to
conclude that the Troopers had reasonable suspicion for
initiating the stop and for the subsequent citations.  The
Defendants urge the court to ignore all the comments the
Defendant Troopers made about the Plaintiffs' motorcycle colors
and view everything from an objective point of view without
considering the full context what the Troopers actually did or
said.  The Defendants maintain that the Troopers had reasonable
suspicion that the Plaintiffs and others were wearing improper
helmets prior to initiating the stop without pointing to any
allegation in the pleading.

This argument is unpersuasive.  First, on a motion to
dismiss, the Court must accept as true the facts alleged in the
complaint in a light most favorable to the plaintiff.  The Court
is not permitted to ignore facts or engage in a summary judgment
analysis on a motion to dismiss.  Second, while the video does
show a biker with a helmet on his handlebars at the beginning of
the footage, this is inconclusive as to whether the biker had the

helmet on at the time the stop was made.  The Defendants are asking the court to speculate without any evidence or allegation in the pleadings that one of the bikers, not the Plaintiffs, had their helmet off at the time of the stop.  This is impermissible on a motion to dismiss and would require the court to inject factual material into the Plaintiffs' complaint which is not present.

Finally, the qualified immunity analysis is typically inappropriate for motions to dismiss for the very issue present in this motion - it is a fact sensitive inquiry.  The Third Circuit has cautioned against dismissing a case based on qualified immunity on a 12(b)(6) motion because "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 Fed. Appx. 788, 791 n.3 (3d Cir. 2009).  While the issue of whether a right is clearly established and whether a reasonable officer could have believed his actions were lawful are questions of law for the court to decide, the Court does not consider facts outside the pleadings in assessing these issues.

The Third Circuit has clearly held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Thomas v. Independence Township, 463 F.3d 285, 291 (3d Cir. 2006).  The

Defendants seek to introduce a fact which is not present on the face of the complaint or the video - specifically that the Troopers had reasonable suspicion that the Plaintiffs were wearing improper helmets prior to the stop - as a basis for their qualified immunity argument.  This is plainly against Third Circuit case law and therefore, the Defendants' qualified immunity argument will be denied without prejudice to the matter being raised upon a summary judgment motion.

Similarly, the Defendants argue that the improper citation to motorized bicycle helmets instead of motorcycle helmets should not be a basis for the misuse of criminal process because probable cause existed for the citations and the Troopers are therefore entitled to qualified immunity.  However, the Defendants point to no allegations in the pleading to support their argument that a reasonable police officer could have believed probable cause existed.  The pleadings as they presently stand assert that Defendants intentionally misapplied the motorized bicycle requirement to a motorcycle situation to serve as a put-down to these motorcycle club members.  No reasonable officer could believe that such an intentional mis-application of the charging statute was lawful.  Therefore, Defendants should not be granted qualified immunity as to the citations at this early stage of the litigation  because the immunity is not established on the face of the complaint.  <u>Thomas</u>, 463 F.3d at

291 (3d Cir. 2006).

Further, as to the duration of the stop, qualified immunity should not be granted at this time.  The Defendants' argument that the duration of the stop was reasonable ignores the factual allegations in the Plaintiffs' complaint that the stop was excessive due to the Troopers' speech on the primacy of "blue and gold colors" and the demands of the officers for the Plaintiffs to take off their jackets, which was directed at all Plaintiffs. Only after these demands were made did the Troopers threaten to impound Plaintiff Ballinger's motorcycle which prolonged the stop for Plaintiff Ballinger.

Therefore, the immunity defense is not evident on the face of the complaint and will not be granted at this time.  However, this denial is without prejudice to the Defendants raising their qualified immunity defense at a later stage in this litigation, once discovery has been completed.

### D.   Violation of the First Amendment

It is undisputed by the parties that it is a fundamental First Amendment Right to wear motorcycle club colors on public roadways. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 505-06 (1969)(upholding the wearing of black armbands by public school students) and Sammartano v. First Judicial District Court, 303 F.3d 959 (9th Cir. 2002)(holding that the wearing of motorcycle club colors in a government

23

building is protected speech under the First Amendment).  The
Defendants do not dispute that the Plaintiffs had a
constitutional right to wear their motorcycle club colors when
riding their motorcycles nor do the Defendants dispute that this
right was clearly established at the time of the traffic stop.
Instead, the Defendants argue that the conduct of the Defendant
Troopers did not violate the First Amendment rights of the
Plaintiffs.

     First, the Defendants argue that there was no actual injury
in this case because the Plaintiffs did not actually remove their
jackets and Plaintiff Ballinger's motorcycle was not towed.
However, this ignores Plaintiffs' central argument that the
traffic stop was allegedly initiated and prolonged solely because
the Plaintiffs were wearing motorcycle colors.  The Amended
Complaint sufficiently alleges that the Plaintiffs were the
subject of an unlawful seizure as a result of their protected
speech, and that the length of the seizure was intentionally
prolonged by the Defendants.  Therefore, the Defendants' argument
that no injury occurred is without merit.

     Next, the Defendants argue that there was no violation of
the Plaintiffs' right to associate because the Plaintiffs were
not actually impaired from doing so.  This argument also ignores
the implications of the Defendant Troopers' allegedly unlawful
seizure.  It is undisputed that the Plaintiffs were on their way

to a motorcycle club charity benefit for a sick child and that the Defendant Troopers knew of this benefit at the time of the seizure.  If, as the complaint alleges, the Plaintiffs were stopped because of their colors and were prevented from attending the gathering of the motorcycle club, this would arguably constitute an infringement of the Plaintiffs' right to expressive association.  As these facts are all properly pled in the complaint, the Defendants' motion to dismiss will be denied.  In addition, the Defendants' arguments focus on the expressive right of association of the motorcycle organization instead of the individual Plaintiffs' First Amendment Rights.  Since the motorcycle organizations are not a party to this action and the complaint alleges violations of individual constitutional rights, the Defendants' arguments are not persuasive.

Next, the Defendants argue that the Plaintiffs' First Amendment Rights were not subjected to an impermissible chill. "An impermissible chill is created when one is deterred from engaging in protected activity by the existence of a governmental regulation or the threat of prosecution thereunder.  But generalized allegations of chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Aiello v. City of Wilmington, Del., 623 F.2d 845, 857 (3d Cir. 1980).

In this case, the Complaint does not allege facts to support

a finding of an impermissible chill.  In the Plaintiffs'
opposition, they do not address the Defendants' argument
regarding an impermissible chill.  There are no allegations that
the Plaintiffs have refrained from wearing their colors or
associating with one another or that their expression has been
chilled as a result of this incident.  Therefore, this portion of
the Plaintiffs' First Amendment claim will be dismissed.

Finally, the Defendants argue that the Plaintiffs'
retaliation claim under the First Amendment must fail because a
lack of probable cause is necessary to prove a retaliatory
prosecution claim.  However, as discussed above, the Defendants'
assertion that probable cause existed for the traffic stop and
citations is a fact outside the Amended Complaint and unsupported
by the pleadings.  In addition, on a Rule 12(b)(6) motion the
Court must read the allegations in the complaint in the light
most favorable to the Plaintiffs.  The Amended Complaint clearly
alleges a lack of probable cause for the traffic stop and
citations.  The Amended Complaint also sufficiently alleges a
claim for retaliation.[2]  Therefore, this argument is not

---

[2]  To state a First Amendment retaliation claim, a plaintiff
must allege  (1) constitutionally protected conduct, (2)
retaliatory action sufficient to deter a person of ordinary
firmness from exercising his constitutional rights, and (3) a
causal link between the constitutionally protected conduct and
the retaliatory action. See Thomas v. Independence Twp., 463 F.3d
285, 296 (3d Cir.2006) (describing elements of retaliatory arrest
claim).  Here, the Plaintiffs have alleged that they engaged in
constitutionally protected conduct by wearing their motorcycle

persuasive and the Plaintiffs' First Amendment claim will not be dismissed.

### E.   Malicious Prosecution Claim and Abuse of Process Claim

Five elements are necessary to allege a malicious prosecution claim under 42 U.S.C. § 1983 when the claim arises under the Fourth Amendment.  In his complaint, a plaintiff must allege: (1) the defendant initiates a criminal proceeding; (2) the criminal proceeding ends in his favor; (3) the defendant initiates the proceeding without probable cause; (4) the defendant acts maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffers deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).  Under New Jersey law, a plaintiff must allege the first four elements, but need not show the fifth element.  Lind v. Schmid, 67 N.J. 255, 262 (1965).

The Defendants argue that the Plaintiffs' complaint fails under federal law and state law because Trooper Carlini had an objectively reasonable belief in probable cause and therefore does not meet the third element of the claim.  The Defendants do not dispute that the Complaint properly alleges the remaining

---

colors, that the Defendant Troopers retaliated by seizing them and issuing false citations, and that this retaliation was caused by the Plaintiffs' wearing of motorcycle colors.

elements.

     As discussed above, the Defendants contention that probable
cause existed is a fact not alleged in the Complaint.  In fact,
the Complaint specifically alleges the Defendants did not have
probable cause for initiating the stop and detention of the
Plaintiffs (Am. Comp. ¶ 199) and that there was no probable cause
for any charge (Am. Comp. ¶ 229).  Therefore, this claim should
not be dismissed pursuant to 12(b)(6) as it is properly pled in
the complaint.[3]

     A malicious abuse of process claim under section 1983 lies
where "prosecution is initiated legitimately and thereafter is
used for a purpose other than that intended by the law."
Jennings v. Shuman, 567 F.2d 1213, 1217 (3d Cir. 1997).  Under
New Jersey law, a plaintiff must show that the defendants made an

---

     [3] In addition, the Third Circuit has instructed that when
addressing the issue of a probable cause on summary judgment:

>      the question of probable cause in a section 1983 damage
>      suit is one for the jury. Patzig v. O'Neil, 577 F.2d 841,
>      848 (3d Cir. 1978). Summary judgment on Montgomery's
>      malicious prosecution claim therefore is only appropriate
>      if taking all of Montgomery's allegations as true and
>      resolving all inferences in her favor, a reasonable jury
>      could not find a lack of probable cause for Montgomery's
>      stop and arrest. Deary v. Three Un-named Police Officers,
>      746 F.2d 185, 191 (3d Cir. 1984).

Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).  This
further supports that the issue of probable cause cannot be
summarily determined on a motion to dismiss when there are
contrary allegations in the complaint and there is no evidence to
support the assertion that the officer had a reasonable belief
there was probable cause.

improper, illegal, and perverted use of process, neither
warranted nor authorized by process, and that the defendants did
so with an ulterior motive. Simone v. Golden Nugget Hotel and
Casino, 844 F.2d 1031, 1036 (3d Cir. 1988)(citing Ash v. Cohn,
119 N.J.L. 54, 58 (1937)).  The distinction between a malicious
use of process claim and an abuse of process claim is that "the
action for abuse of process lies for the improper, unwarranted,
and perverted use of process after it has been issued; while that
for the malicious use of it lies for causing process to issue
maliciously and without reasonable or probable cause." Ash, 119
N.J.L. at 58.

     The Defendants maintain that the Plaintiffs have failed to
state an abuse of process claim because the Plaintiffs have not
alleged that the Defendant Troopers had any involvement with the
judicial process after the citations were issued.  However, this
argument ignores Plaintiffs' allegations regarding Trooper
Carlini's threat to the Plaintiffs to take off their jackets or
have Plaintiff Ballinger's motorcycle towed.  The traffic stop
was delayed for all Plaintiffs after they refused to take off
their jackets and were forced by the Troopers to wait for a tow
truck to be called.  This action resulted after the citations
were issued and was allegedly motivated by an ulterior motive to
force the Plaintiffs to remove their colors.  While the
Plaintiffs never took their jackets off and were eventually

released prior to the tow arriving, Trooper Carlini in the presence of the other Defendant Troopers still detained the Plaintiffs for an extended period of time as a result of his threat.

Therefore, the court finds the Plaintiffs have properly alleged an abuse of process claim.

**F.   Violation of the Fourteenth Amendment**

The Plaintiffs allege their Fourteenth Amendment rights to procedural due process, substantive due process and equal protection were violated by the Defendants' conduct.

The Defendants argue that all of these claims pursuant to the Fourteenth Amendment should be dismissed.  The Defendants first argue the Plaintiffs' malicious prosecution claim arises under the Fourth Amendment, not the Fourteenth Amendment. Further, Plaintiffs were offered an adequate post-deprivation remedy for the citations at their municipal court hearing and Plaintiff Ballinger's motorcycle was not in fact towed, so the Defendants argue that there is no procedural due process violation.  As to the Plaintiffs' equal protection arguments, the Defendants argue that the Plaintiffs are not members of a protected class and that the Plaintiffs have not alleged that the Troopers were motivated by a discriminatory purpose.

In this case, the procedural due process arguments are duplicative of the malicious prosecution claim which arises under

the Fourth Amendment.  Therefore, claims by the Plaintiffs alleging violations of procedural due process will be dismissed.

Similarly, the Plaintiffs' claims for violations of substantive due process are also duplicative as they allege the same facts as Plaintiffs' First Amendment Claims.

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims."  Albright v. Olivery, 510 U.S. 266, 269 (1994). See also Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir. 1998)("*Albright* commands that claims governed by explicit constitutional text may not be grounded in substantive due process).

As discussed supra, Plaintiffs have sufficiently alleged a violation fo their fundamental rights of free speech and expressive association by the Defendant Troopers.  Indeed, the Plaintiffs conceded at oral argument that their claims are governed by the First Amendment and this is essentially a First Amendment case.  Therefore, Plaintiffs' substantive due process claim will be dismissed because it is governed by the First Amendment and is more appropriately addressed as a First Amendment claim.

However, Plaintiffs' equal protection claim is sufficiently

alleged and will not be dismissed.

The equal protection clause has been held to protect both unlawful classifications of people as well as government discrimination among people in the exercise of a fundamental right. See Skinner v. Oklahoma, 316 U.S. 535 (1942); U.S. v. Williams, 124 F.3d 411, 422 (1997)("classifications affecting fundamental rights are given the most exacting scrutiny" under the equal protection clause); and Capital Cities Media, Inc. v. Chester, 797 F.2de 1164, 1192-93 (3d Cir. 1986)(reasoning that the fundamental rights body of equal protection case law provides an independent basis for claiming relief for infringement on freedom of speech). Further, when a fundamental right is implicated, strict scrutiny applies. Romer v. Evans, 517 U.S. 620, 631 (1996).

Here, the First Amended Complaint alleges the Defendant Troopers seized the Plaintiffs to enforce their policy that only state police officers could wear expressive colors on New Jersey highways and members of motorcycle organizations could not. This is sufficient to allege that the government Defendants discriminated against members of motorcycle organizations in the exercise of their fundamental First Amendment rights and is sufficient to survive a motion to dismiss. The Defendants' justification for seizing Plaintiffs for wearing club colors awaits any further motion practice but cannot be decided upon

this Rule 12(b)(6) motion.

Therefore, while Plaintiffs' Fourteenth Amendment claims alleging violations of procedural and substantive due process will be dismissed, the Plaintiffs will be permitted to proceed with their equal protection claim.

### G.    Violation of 42. U.S.C. § 1985

The Amended Complaint alleges violations of 42 U.S.C. § 1985(2) and (3) for civil rights conspiracy.  Subsection 2 provides for liability:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).

The elements of a § 1985(3) claim for conspiracy are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (internal quotations and citations omitted).

A civil rights conspiracy claim under Section 1985(2) or (3)

must be based on invidious, class-based discrimination, such as race-based denial of equal protection.  Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) and Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976).

In this case, invidious class-based discrimination is not at issue and there are no allegations involving a protected class. Rather, the allegations are limited to the Plaintiffs as members of motorcycle organizations.  Plaintiffs' equal protection claims are based primarily on the infringement of a fundamental right and not class-based distinctions.

In light of the Third Circuit analysis in Brawer and the Supreme Court analysis in Griffin, the Plaintiffs' § 1985 conspiracy claims will be dismissed.  The Third Circuit has clearly held that § 1985 conspiracy claims are not "intended to apply to all tortious, conspiratorial interferences with the rights of others."[4]  Brawer, 535 F.2d at 830.  Plaintiffs' claims

---

[4]  The Supreme Court has held:

> Whatever may be the precise meaning of a "class" for purposes of Griffin 's speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid. Ibid.

are properly redressed by § 1983 which "provides a civil remedy for specific acts of constitutional deprivation." <u>Brawer</u>, 535 F.2d at 839.  Plaintiffs' claims for civil rights conspiracy under § 1985 will be dismissed.

### H.   Violation of New Jersey Civil Rights Act

The New Jersey Civil Rights Act, N.J.S.A. 10:6-1 <u>et</u> <u>seq.</u>, was modeled after 42 U.S.C. § 1983 and creates a state law cause of action for violation of an individual's federal and state constitutional rights.  <u>Owens v. Feigin</u>, 194 N.J. 607, 612 (2008) <u>and</u> <u>Ortiz v. UMDNJ</u>, 2008 U.S. Dist. LEXIS 117884, *4 (D.N.J. Dec. 15, 2008).  For the reasons discussed above, the Plaintiffs have alleged sufficient claims for violations of their First Amendment, Fourth Amendment, and Fourteenth Amendment constitutional rights.  Therefore, the Plaintiffs have properly stated a claim pursuant to the New Jersey Civil Rights Act.

### IV.  MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)

Rule 12(f) provides a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

---

<u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 269 (1993).  In this case, there is a lack of the animus requirement which would allow suit under § 1985.  While Defendants' conduct arguably infringed on Plaintiffs' First, Fourth and Fourteenth Amendment rights, the facts do not connote something more than a group of individuals who wish to engage in conduct of which the Defendants disapprove.  Without more, this is insufficient to sustain an action pursuant to § 1985.

As a general matter, motions to strike under Rule 12(f) are highly disfavored.  See Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).  This is because "it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).  The successful motion to strike is granted to "save time and expense" by clearing away pleadings "which will not have any possible bearing on the outcome of the litigation." Garlanger, 223 F. Supp. 2d at 609.  However, "even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d 353, 359 (D. Del. 2009) (quotations omitted).  The district court's decision whether to grant a motion to strike under Rule 12(f) is discretionary.  Id. at 217 (citing River Road Devel. Corp. v. Carlson Corp. Civ. No. 89-7073, slip op. 1990 WL 69085 at *2 (E.D. Pa. May 23, 1990)).

In this case, the Defendants' motion to strike the Consent Decree from the pleadings will be denied.  The Consent Decree is relevant because it was in full force and effect at the time of the traffic stop at issue in this case.  It is the reason why a video recording of the traffic stop was made.  Most importantly, the video was started late in this case, and the Consent Decree may be a basis for either a spoliation inference or a negative

inference which would be favorable to the Plaintiffs' case.[5]

Considering the general policy which disfavors motions to strike and the relevancy of the Consent Decree to Plaintiffs' claims, the Defendants' motion to strike will be denied.

## V. CONCLUSION

For the reasons discussed above, the Defendants' motion to dismiss will be granted in part and denied in part and the Defendants' motion to strike will be denied.  The heart of Defendants' motion is its insistence that the Defendant Troopers had probable cause to stop the Plaintiffs and issue the citations.  This factual inference is outside the four corners of the pleadings and unsupported by any affidavits or exhibits.  Further, the Defendants' motion asks the Court to make several findings of fact which are inappropriate at this early stage of the litigation.  The Plaintiffs have sufficiently stated a claim for violations of their constitutional rights under the First Amendment, Fourth Amendment and Fourteenth Amendment.  In addition, the Plaintiffs have sufficiently stated a claim for malicious prosecution and malicious abuse of process.

However, the Plaintiffs' procedural and substantive due

---

[5] The Court does not determine whether the Consent Decree is admissible at trial.  While it may serve to establish the requirement for videotaping of traffic stops, its probative value may need to be weighed against the prospect of undue prejudice to Defendants, confusion of the jury or undue consumption of time under Rule 403, Fed. R. Evid.

process claims will be dismissed.  In addition, Plaintiffs' civil conspiracy claims will be dismissed as the Plaintiffs have not alleged invidious, class-based discrimination sufficient to establish a 42 U.S.C. § 1985 claim.

Finally, the Defendants' motion to strike will be denied as the consent decree is relevant to the instant case and could form the basis of a negative inference in favor of the Plaintiffs' claims.

The accompanying Order will be entered.


**March 29, 2012**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge

38